May it please the Court, Janet Schreyer on behalf of the Plaintiffs' Appellants in this matter. The District Court erred in granting summary judgment to the defendants on Oregon's statute of limitations defense asserted by the defendant given the factual nature of the dispute and related to discovery, particularly given the complexity of the underlying matter. If the Court agrees... Well, there's no question that this would generally be an issue of fact when we're talking about a statute of limitations. In fact, heck, an Oregon case would say that this generally presents a question of fact. But it says still in some cases the fact may be such that no tribal issue exists as to when a plaintiff knew or should have known that the defendant caused the harm suffered. And so I guess what we have to look at are the facts, right? That's correct. And in this particular case, it seems to me that there was a report in February of 2006 to the investors on a balance sheet that said that Holt Homes was owed $406,984 and that they had previously been paid $1,100,000 of a $1,506,984 loan in the period ending 12-31-2005. Is that right? It does say that, yes. And in January 18th of 2011, Shaw, going for these people, sues the company and Kubitschek, and they say intentional misrepresentation, fraud, breach of fiduciary duty, and conspiracy, all in connection with the plaintiff's investments in the company. And then they make a second amended complaint and they say misrepresentations that Kubitschek made, but not limited to that the venture was highly successful, that it would be managed by him and the records would be timely and fully and properly provided. That claim was thrown out by the Texas court because it brought him to the wrong place. And then they come up here. And now they file a suit and they allege misrepresentation, breach of fiduciary duty, and aiding or abetting an unlawful sale of securities. Substantially the same, arising out of the same investment. Suspecting fraud had been committed, hoping to get some documents in Texas that would suggest that. In fact, you now admit that's why you filed the Texas suit, was to get some documents. And then Bigby requests these documents and he gets on May the 5th, 2014, a paid invoice register that lists the payments from the company to Holt Homes for the amount used to purchase MSGD and CCP. Why are you not aware or on notice? You've said this is fraud. You've said this is misrepresentation. You've said there's a loan that should never have been made to the company. It was always supposed to be out of investments. And now you know there's the loan. You had it given to you back in February 2006, and now you've got the documents suggesting exactly what it's about. And you're going to say, based on this, you didn't know or should have known? I think the overall answer is no or should have known what? Should have known there was a fraud that you've alleged and the misrepresentation, which is we won't be doing this. We'll get all the money from anybody else. For starters, that's a long question. Well, I was just trying to lay the facts out here. Yeah, the issue, the fraud that is being alleged in this lawsuit has to do with using a loan in lieu of equity. And that is something that has never been disclosed until 2015. It was affirmatively concealed by the defendants. There was a loan. You knew there was a loan. Right. Loans are not forbidden. But the loans in lieu of equity, so you're saying, seems to me what your argument is, you're saying to me, Judge, we don't know it until they admit it. So get rid of this no should have known stuff. They have to admit it and know it. That's not what we're saying at all. And that's what the district court was saying. That's why I listed out all those things the district court put in his opinion. He said, you know, I'm not going to say you should have known when you filed the Texas lawsuit, but I'm saying based on your filing of the Texas lawsuits, you knew where you were going, you knew what the deal was, and now when you get to May of 2014, you got the invoice register, you know what happened. Or you at least should have known, and therefore summary judgment. The statute of limitations does not start running until you have knowledge of the facts of the fraud itself. Or should have known. Or should have known. And in this case, while the defendants had knowledge sufficient to make them suspicious, and you'll see Judge Simon's opinion is laced with words, they were suspicious, they were suspicious. Yes, we were. And we asked and asked and asked for documents. And it wasn't until 2015 when the loan in place of equity, which is fraudulent, was concealed and is against the language of the PPM, was that revealed. And the Texas lawsuit was about an entirely different thing. And Judge Simon, even Judge Simon got that right. Well, even Judge Simon said, you know, we're not going to do it, and the Texas thing was filed because she didn't have any knowledge. But when we get to the May 5, 2014 paid invoice register, the only thing you got when you say the statute ought to run is you've got the same register. It says the same thing. The only thing you got further was counsel says it's a bridge loan. So you're saying that letter from counsel saying the Holt Homes loan was a bridge loan is the only thing that could have given you any knowledge. That is not our argument at all, Your Honor. The reason that knowing that there was a loan in 2014, first of all, the court is required to look in context, not just at one thing, but to look in context. Well, that's why I tried to give the context. At the documents. Give me some context. I'm going to give you some. I'll give you some bullet point context. The 2014 payment evidence the court relied on that they claimed, defendants claimed, was buried in page 18 of 22 of something labeled an invoice register. That is different than they have things like insurance, mulch, all kinds of things that are not acquisition loans. So our attorneys didn't go through and look at it very well. So we wouldn't have known? Again, a debt by an affiliate is not in and of itself a problem. Only a loan is substitute of equity. Along with the 2014 documents, we did get a list of acquisition loans. Those are equity loans. Included in that list. And because they didn't put it in the acquisition loan, that's enough? Correct. They had a very specific document that listed acquisition loans, and this wasn't in it. Furthermore, they had never disclosed that the closing was underfunded. And so there was no reason for the plaintiffs to be suspicious that the loan that was disclosed was, in fact, an equity loan. And that, again, only came out later and not until 2015. Until they admitted it. Well, can I just follow up on Judge Smith's question? Because I grant you that the acquisition loans document seems to me as a at least kind of leans toward raising a jury question because it's conspicuously not on that document. But the only other document, as I understand it, that you got after seeing that list of acquisition loans was this 2015 ledger or whatever it's called. And it does seem to me to reflect pretty much the exact same information that you got in 2014. So the question I came away with was what was so revelatory about this 2015 thing where you were like, oh, my God, now we can see. So what is it that we're supposed to look at there that gave you this aha moment? Well, they disclosed that the matter was underfunded and that there was a bridge loan. And a bridge loan then that raised the question of, oh, is it an equity loan or not? I want to say one other thing about what was provided in 2014 that made it deceptive, that, again, should be a jury question of whether we should have known something in 2014, is that in addition to the acquisition loan list that conspicuously omits the Holt-Holmes loan, the defense attorney provided a letter that set out the historic liabilities of the LLC. But consistent with the acquisition loan list, attorney boards did not mention the Holt-Holmes loan. And so under the circumstances, there's not a way to put two and two together. If you don't even know it's underfunded to begin with, then there would be a reason for a bridge loan. And knowing that loans are acceptable under multiple circumstances, as the defendant points out, under the circumstances here, there was no reason to put two and two together. And, again, you don't have to ñ mere suspicion is not enough to trigger the statute of limitation. Under the circumstances, you have to know the facts of the fraud have to be provided. And here, the evidence shows the facts of the fraud, that is the equity loan, were actively concealed. Why else would they give us a list that has the acquisition loans in 2014 and omit the Holt-Holmes list? It's only later when that list comes forward. And in 2015, it was also listed on the acquisitions list. It's clear concealment. It's not like you got an updated acquisition loans sheet. Oh, now there's an extra loan on there. So what is it? I believe it was on the acquisition loan list that was provided in 2015. In 2015, ER-150 listed the Holt-Holmes on an acquisition loan document. So it's not just later he called it a bridge loan and we came to it. You want us to look at ER-150, you said? ER-150 doesn't say it. Hold on. That's my problem, right? I never saw anything in 2015 that said, here's an updated list of the acquisition loans, and boom, there it is. There was never anything like that. It was just this other ledger stuff, and that's what I'm looking at on ER-150. My understanding is this is an acquisitions loan list, and it's listed there. Wait, wait, wait. What do you mean your understanding? Where does it say that? Where does it say? I've got the acquisition, MGDCCP acquisition, LLC, paid invoice register. I've got the invoice, the description, all of the things that had to do with the Holt-Holmes acquisition. I turned to 150. I've got the same thing. It says the same exact stuff. The only thing is it doesn't put on the last repayments. It still has the loans. There's no difference. 150 is no different. No, it's on the second page of the document entitled MGDCCP Acquisition, LLC, and that's what it was on the first one you got at ER-55, MGDCCP Acquisition, LLC. Same title, same thing. There's no difference except they leave off the payments. They listed on the acquisition list. Where's the acquisition list you're going to talk about? I'm going to look back to my documents and see. I'm into my rebuttal time. Can I come back and tell you that on the rebuttal time when I come back? But I have that, and I do want to say the Texas lawsuit was over something entirely different, and we rely on Judge Simon's decision. Yes. And to the extent he mentions it, it's merely raising a suspicion, and a suspicion is not enough. Do you have another question? I didn't. Okay. All right. Let's hear from counsel for the defendants. Morning. Good morning. May it please the Court. Phil Havither, attorney for the defendants. I first want to start with the notion. I think the Court's well aware of the discovery rule does not protect somebody that sleeps on their rights, somebody that has information, that has a suspicion. And as plaintiff's counsel admitted, there's been suspicions throughout this investment. That's what caused the lawsuit in 2011 in Texas. Conveniently, they say it's only to get documents. Well, they didn't sue for an accounting. They sued for fraud, misrepresentation, claims that they've now sued for here in Oregon. Notably, though, in that 2011 case, when we asked during their deposition what were the facts, Texas has a liberal pleading standard. It's probably generously called a notice standard, that I'm suing you, not much in the petition itself. But they had suspicion of fraud because they sued for it. So either there was this admission that we violated the equivalent of Civil Rule 11 and we didn't have a basis for it. But when asked during the deposition what were the facts that supported that lawsuit, they said, I can't remember. And I can give you the specific site to those transcripts, ER 437 through 439 and ER 417. They were clear, though, that the reason they sued in Texas is because they suffered harm. They believed they suffered harm, and those were the claims that they believed they had. So in 2011, they admit they had harm. They admit they had suspicions. It's not clear why they sued in Texas instead of where the lawsuit had to be brought in Oregon, but that's where they chose to go. After the case was dismissed, they then appealed it, whether that was a reasonable decision to continue to pursue that in Texas or refile in Oregon. It's a question that can be decided later. However, when the mandate was issued in December 2013, a new email went out from Mr. Hickock to the investors that said, what is he hiding? The suspicions continued. And in February 2014, they get the attorney, Mr. Bigby, who sends an email out that says, my clients have serious suspicions they're victims of a scam. So they say that it's a scam. They admit they have harm. And yet, what do they do? They get these documents in 2014. So maybe just address the loan acquisition or whatever that thing is called. I don't have it in front of me now. Because that seems to me to be their best document. Shouldn't that loan have been listed on there? No, Your Honor. So we have two different documents, a paid invoice register that was produced in 2014. It wasn't buried. If you look at the letter that accompanied the paid invoice register, it's listed on, I believe, on the third page. It says, item number seven, paid invoice register for the company for 2006 to, I believe it was 2014 at that time. It may have been 13. That document showed all the payments to hold homes, $3.6 million. Now, it tracked the investor updates that had been provided already, as Judge Smith pointed out. The document that they're hanging their hat on, this entries by account, it's a separate document. It has different things listed. It's not an acquisition loan. Just a word. You're looking at ER-162? Yes, Your Honor. I believe it starts on ER-149 and then runs through. The page is E-162. Do you have that in front of you? I do. Great. I just look at that, and the little heading says, MGDCCP Acquisition Loans. And that lists, I guess, five loans. And the hold homes thing, of course, is not on there. And they say it should have been. And obviously, had you put it in there, we would have brought suit in 2014. Your Honor, so this is part of the series of entries by account, which it does list the hold homes on the prior pages. It also lists workers' comp payments. So it's a different summary of payments that have been made. But to answer your question directly, it's not on 162 because it was not an acquisition loan. It was not a loan that was part of the acquisition. It wasn't an assumed loan. It wasn't used to purchase these properties. What was best described as Mr. Kubitschek had the amount pledged from investors. He knew the minimum offering, remember, was $3 million. Max was $15 million. At this point in time, in October of 2005, he had $6 million in the door. He knew he needed another three and a half to be able to close. And he had pledges. He knew that money was coming in. So Holt advanced that money. And zero interest, no security given. And whether it was a bridge loan, whatever the term is, the fact is plaintiffs knew about it much earlier. Let me ask you a further question, which I think will help Judge Wofford and me. It's now counsel's argument that when these documents came again in January 2016, for instance, that ER-150 was sent to them and that now the document, which we have as ER-162, reflected that the Holt Homes loan was in that. In other words, this MGD-CCP Acquisition Loans-162, that a similar schedule was sent to them at the same time they received this ER-150, which listed Holt Homes therein. Is that true? Holt Homes was never listed as an acquisition loan. Holt Homes was listed as payments being made to Holt Homes in both 2014 and 2015. So it never was, in another schedule like this, then listed? If I understand, as an acquisition loan like ER-162, no. That is correct. So the best they got was the same thing. They got the ER-155 in 2014, and they got ER-150 in 2016, and it was the same document. It was the same document, Your Honor. And what's critical that I want the Court to focus in on is the document was produced in May of 2014. At some point in time, plaintiffs switched attorneys. Ms. Johnson came on board. Ms. Johnson followed up with a letter in 2015 that says, I've now spent time with the documents you provided last spring, and serious questions remain. And so it wasn't the acquisition loan that they were focused in on. It was the documents that they looked at. On summary judgment, we were arguing that the Holt loan, the Holt bridge loan, whatever term we're going to put on it, that was well known. It was in the investor updates. And at that point in time, in February 2006, it showed $1.5 million was still outstanding as of – excuse me, $400,000 was outstanding as of December 2005, and $1.1 million had been repaid over a month period. So it wasn't hidden. The fact that this money came in was known. And $1.5 million that was paid, that's more than landscaping. That's a significant amount of money, especially when $9.6 million was invested into it. So it should have stood out at that point in time. This whole acquisition loan was something that came significantly later in the summary judgment briefings because it was only in the responsive pleading that we understood what should have started the smoking gun. And please understand, Holt doesn't concede that there was a fraud, so it's a little bit hard for us to say they should have known something happened at this point because we don't concede there was any fraud at all. What our argument is is that plaintiffs tell us, if you sued in Texas in 2011 for fraud, how can you now come back in 2016 and sue for fraud? And then we started getting the story of, well, it's because the deal was undercapitalized. Well, I think they're backed off of that a little bit. Now the focus is squarely on this Holt loan, and the argument seems to be that this loan that was made was repaid to Mr. Kubitschek, to Holt Holmes, before money went to the investors and before other creditors were paid. It was only late in the summary judgment briefing that this argument now appeared that, well, it was not listed as an acquisition loan. It was confusing to us. We didn't know what it was. It's evidence of more fraud. But what the discovery rule requires is that a plaintiff act with diligence. And if they don't, if they get documents in 2014 and don't review them, and that's in the record, the plaintiffs say, I don't recall ever having seen these. They didn't spend any time looking at it. Their attorney said months later, I've now taken a look at it. What would a reasonable, prudent person do at that point? They would follow up and ask further questions. And that's what plaintiffs did do in 2015, got more information and didn't sue right away. The bridge loan was, the terminology was used in February of 16, but the lawsuit wasn't filed until February 2016. And so when you look at all of these factors, the suspicions remained. They allegedly have been harmed in 2011, but they just didn't act on it. And a plaintiff doesn't need to know the exact elements of their claim. They don't have to know each and every fact. And, Judge Smith, I agree with your point that at this point in time, they want the defendants to admit fraud. And that's when the statute of limitations should start. It's nearly like as we discover something else, the statute is re-triggered somehow. And that's not the analysis. That's not correct. It's what would the person do when they get this information. So if they're confused, they would do like what they did. They would follow up with questions. But too much time passed between getting that information and following up. Can I just ask a question on this reasonable person standard? Does that become a fact question that we need to send to the jury? Or as judges, we can look at this and say as a legal matter, we need to determine in our own minds what a reasonable person would do? Your Honor, I think any time a judge hears reasonableness, they immediately think fact question, and that's fair. But if the jury, if a reasonable jury could only reach one conclusion, and that is that they had this information and they didn't act on it in a timely manner, then the court can decide that on summary judgment. But it is a normal summary judgment standard, and if there's any evidence that any juror could come to a different conclusion, then we need to go the other way on that. That's correct, and that's why Judge Simon looked at the 2011 lawsuit and said, Plaintiffs, you're saying it's different. You don't remember the facts. You sued for the same claims. You said you were harmed. But Judge Simon didn't grant summary judgment just based on the 2011 lawsuit. He said it is possible a reasonable juror could reach a different conclusion. However, when you look at the 2014 ledger, the suspicions remained, and then how quickly did they act on that? There's only one possibility, and we don't think there's any other conclusion. There's only one that a reasonable juror could reach. Well, not only that, but didn't Judge Simon say, okay, based on what we have in front of us, we're not going to make the statute of limitations run from the time you filed the suit in Texas because at that point you were only looking for documents, and you say you were looking for documents, so we're not going to have it go there. But we're going to look at what it is you were really talking about, what you were really after. And now you get documents. You've asked for these documents, and here's the smoking gun document, which is the smoking gun that you now say is the document which makes a difference, and yet it's the same document which you say couldn't have been a smoking gun back in 2014. Isn't that what he said? Yes, Your Honor. That's what he said. And important, in the Texas lawsuit, documents were produced. All the tax returns that were available were produced, profit and loss balance sheets. Everything was produced at that time. And then when additional questions were asked, documents were further produced. So I believe that's why Judge Simon gave the plaintiffs the benefit of the doubt and used the later date, although I submit that this court could still look at the Texas lawsuit and say at that point in time you were well on notice. Oregon does have the savings statute. We briefed this before Judge Simon, whether it's relevant to this court or not. It's another element that they could have refiled in Oregon, and we think that's what a plaintiff should have done. Once they're sued in the wrong jurisdiction and they're informed of that by the Texas court, they should have gone to Oregon and refiled. The fact is they went from 2011 until 2016. That period of time is instrumental, and this court should focus in on that, whether there's a reason for that delay. Okay, great. Thank you very much. Do you have some time for rebuttal? So I want to look back to the documents that we were just looking at before that were indicated to be identical, that Judge Simon found were identical, and look at the actual dates of the entries. The 2014 document in ER 55 is dated 11-05 is when the loan occurred. That's after closure. It couldn't have been an equity loan after closure. Closing occurred in October. So in 2015, for the first time, looking at ER 150, the documents reflect 10-05, an earlier date for these loans, which is the time of the closing, which again raises the specter of was this an equity loan and what happened. When we got these, we asked for more information. And if you look at Ms. Johnson's letter. But didn't you wait a year? I mean, after you got ER 50, you waited a year before you asked for more information? Make sure I have the timeline right on that. We changed counsel, and they did ask, the statute doesn't begin running until you have facts reflecting the fraud. So we have suspicion of fraud. No, that's not accurate. It should have known. It should have known. I think you keep wanting to avoid that phrase. This isn't the fact of the fraud. This raises a suspicion of the fraud. The documents reflecting the fraud came in 2015 when we knew that there was information that this was an equity loan. So we have that. This is when it starts running. This is when we know or should have known. Again, it doesn't say it. It's an equity loan, and it's against the PDM. But just a minute. I want to ask you a little bit about that. You had in front of you in February 2006 a report of a loan. It said $406,984 balance sheet. The loan was for the prior period of 12-31-2005. You knew that when you got all of this. That's not an equity loan.  Just a minute. Now you're saying because you had this one entry on 150 that it all of a sudden gave you big idea. MGP and CPP, money from Holt, 10-3-2005. You've got all of that in February of 2006. Balance sheet, previously paid for the period ending 12-31-2005. Why is that of significance? Loans in and of themselves are not impermissible. Simply the equity loans. But that doesn't answer my question. The information is the same. The stuff you knew is the same. It's not the same. It's a loan that occurred after the closing, and therefore it couldn't have been an equity loan. Furthermore, as you can tell, there's misrepresentation going on because they were reflecting the wrong numbers. You'll see the numbers change. Even though everything occurred, these loans occurred in October, they're clearly concealing information and not accurately portraying it because the numbers change. So it's only when- So it has nothing to do now with this Exhibit 162 at all. It now has changed. Your argument now has to do with 150's changes? No, it's the constellation, all the facts and circumstances. Because guess what? This ER 162 was again given to you in June 2015. It was the same as well. The 162 lists acquisition loans, and it doesn't list this one. And it didn't in 2015 either. But we had information that it was equity related because- How did you get it? They gave it to us. Well, when? When do you tell me? And furthermore, they gave us information that the deal was underfunded. And as a result, it raises a question. It's easy to look in hindsight. Now we know it's just like looking at an x-ray where you know there's a dot because there's a malpractice case. You know what you're looking for now. We didn't even know what the question was. Again, we had suspicions. You'll see the letters are there. We think something's wrong. We don't know what it is. And finally in 2015, we got enough documents to put two and two together. We submit there is an issue of fact. It should go back to the trial court. Thank you very much. Case disargued is submitted. We are in recess for today.
judges: N.R. Smith, Watford, R. Nelson